## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD EARLEY, JR., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. 18-760 |
| | : | |
| v. | : | |
| | : | |
| JMK ASSOCIATES d/b/a PREMIER POOLS | : | |
| AND SPAS; AQUA FINANCE, INC.; and | : | |
| LYON SERVICES CORPORATION d/b/a | : | |
| LYON FINANCIAL, | : | |
| | : | |
| Defendants. | : | |

McHUGH, J.                                                                                                          April 15, 2020

## MEMORANDUM

Presently before the Court is Plaintiff's petition for an award of attorneys' fees. Plaintiff

has stipulated with Defendants Aqua Finance, Inc., and Lyon Financial to "an out-of-court

settlement that allows for Plaintiff to apply to this Court for reasonable attorneys' fees under the

Truth in Lending Act, 15 U.S.C. § 1640(a)(3), the Credit Services Act, 73 P.S. § 2191, and the

Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-9.2(a)." ECF 23. Pursuant

to that agreement, Plaintiff's counsel now petitions for an award amounting to $54,281, and

submits hours expended and associated rates in support of that sum. ECF 24, at 9-13; ECF 24-3.

Defendants oppose Plaintiff's motion and request a reduced fee of $16,409.

Defendants support their requested reduction on four grounds. They argue, first, that the

hourly rates offered by Plaintiff's lawyers are excessive and should be reduced; second, that time

spent on certain background research and complaint drafting is unreasonable and ought to be cut

in half; third, that certain entries are impermissibly vague, patently excessive, or strictly

administrative and should be struck; and, finally, that invoice entries solely attributable to a codefendant should be omitted.  ECF 27, at 1-2.

Defendants' requested reductions are, for the most part, either unsupported by their own terms or a misapplication of the relevant law to the record.  Nonetheless, a modest reduction is warranted and, for the reasons that follow, the Court will award an attorneys' fee to Plaintiff of $46,988.

**1. Reasonable rates for Mr. Flitter and Mr. López-Jacobs are $725 and $275 per hour, respectively.**  Defendants first contest the hourly rates requested by Plaintiff's counsel. Plaintiff requests this Court approve a rate $735 per hour for Cary L. Flitter, a senior partner, and $275 for Jody López-Jacobs, a midlevel associate.  Defendants contend that "the Court should look to [the] opinion in *Homer* . . . which approved an hourly rate of $675 for Mr. Flitter" and a "rate of $240" for Mr. López-Jacobs, "and involved a similar consumer protection claim brought under the Fair Debt Collection Practices Act."  ECF 27, at 9-11 (citing *Homer v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2018 WL 2239556, at *3 (E.D. Pa. May 16, 2018)).

I agree with Defendants that Judge Savage's opinion in *Homer* is instructive, and I will use the rates approved in that case for these lawyers as a baseline and adjust accordingly.  In *Homer*, the Court found as reasonable $675 per hour for Flitter and $240 for López-Jacobs. Increasing those rates by 5 percent per annum over two years—a rate of increase that aligns with regional trends—yields $744 for Flitter and $265 for López-Jacobs.  *See* ECF 24, Ex. B, ¶ 8 (noting that regional billing rates have increased between 5 percent and 7 percent in recent years).

Defendants suggest the Court award Plaintiff's counsel the 2017 rates approved in *Homer* without adjustment.  But acceding to that request would misapply the law.  In this Circuit, it has

long been true that "[w]hen attorney's fees are awarded, the current market rate must be used." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). The current market rate "is the rate at the time of the fee petition, not the rate at the time the services were performed." *Id.* This policy, of course, makes eminent sense—money available in the present is worth less than the same sum in the past. Thus, because plaintiffs' counsel in these cases often are not compensated until the end of representation—unlike the monthly billing arrangement standard at the defense bar—the amount awarded should correct for the wages' foregone earning potential. It would surprise me if Defendants' counsel still are charging 2017 rates.

The rates I will approve—$725 and $275 per hour, respectively—also align with the fee schedule published by Community Legal Services, the leading full-service legal aid organization in the Philadelphia region. Community Legal Services' fee schedule is "well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001); *see also Homer*, 2018 WL 2239556, at *2; *Pelzer v. City of Philadelphia*, 771 F. Supp. 2d 465, 470 (E.D. Pa. 2011). That schedule was last updated in July 2018 and suggested then upwards of $700 per hour for a lawyer of Mr. Flitter's experience and $275 for one of Mr. López-Jacobs's. Extrapolating those rates by 5 percent for an additional year yields a maximum of $735 for a lawyer of Mr. Flitter's experience and $289 for one of Mr. López-Jacobs's experience.

Finally, the rates I will approve adequately reflect the experience and credentials of Plaintiff's counsel. Mr. Flitter has practiced consumer protection law for over three decades, taught the topic at various law schools, and contributed to the leading legal treatise in Pennsylvania on consumer law issues. Mr. López-Jacobs graduated *magna cum laude* from

Temple Law School, served on its law review's editorial board, and clerked for a Judge serving in this district.

In all, the rates I will approve for Mr. Flitter and Mr. López-Jacobs—$725 and $275 per hour, respectively—fairly extrapolate from rates previously approved by other courts in this district, align with the fee schedule published by Community Legal Services, and adequately compensate for counsel's relative experience and expertise.

**2. Time spent on background research and drafting Original and Amended Complaints mostly is reasonable.**  Defendants next contest various billing entries immediately preceding Plaintiff's filing of the Amended Complaint.  Defendants assert that the time Plaintiff's counsel expended in this period should be reduced by half for two reasons.

First, Defendants contend that some entries reflected research into "uncomplicated and basic areas of consumer protection laws which are or should be clearly within the realm of knowledge and expertise possessed by Mr. Flitter and his firm."  ECF 27, at 12-13.  Most entries identified by Defendants, to the extent they reflect research into "uncomplicated" or "basic" areas of consumer protection law, seem appropriately brief.  In other words, my review of the entries identified by Defendants suggests that Plaintiff's counsel adequately limited their background research to ensure they understood how their client's facts applied to the relevant law, and not much more.  However, part of the justification for Mr. Flitter's high rate is that he possesses particular expertise in these fields.  Because of his expertise he requires less time to engage in background research into a client's potential claims, especially where he has the services of a capable midlevel associate.  Thus, I conclude that all time expended by Mr. López-Jacobs to conduct background research is reasonable, but I will deduct 3 hours from the time expended by Mr. Flitter.

Second, Defendants go on to contend that "Plaintiff's generic Amended Complaint (and original Complaint, for that matter) follow the same non-specific, cookie-cutter pattern of basic consumer protection complaints which simply cut and paste distinguishing facts (i.e., parties' names, addresses, etc.) and parrot the elements of the relevant statutes." *Id.* at 14. But here Defendants identify a mere 3.9 hours they find problematic, split about equally between Mr. Flitter and Mr. López-Jacobs. I agree that more of the work should have been done by Mr. López-Jacobs and reduce Mr. Flitter's time by one hour.

**3. No entries identified by Defendants are impermissibly vague.** A request for fees must be accompanied by "fairly definite information as to hours devoted to various general activities." *United Auto Workers Local 259 v. Metro Auto Ctr.*, 501 F.3d 283, 291 (3d Cir. 2007). "And where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Defendants allege that "many of Plaintiff's billing entries are impermissibly vague, impossible to attribute to Defendants, as opposed to any other defendant, or are obviously unreasonable for the particular task." ECF 27, at 16.

None of the problematic entries identified by Defendants strike me as impermissibly vague. As required by *Metro Auto*, the entries include sufficient information about hours devoted to various general activities, like "partial discovery [or] settlement negotiations." *Metro Auto Ctr.*, 501 F.3d at 291. And each entry marks the "hours spent by various classes of attorneys." *Id.* It is true that many entries do not specifically refer to Defendants Aqua or Lyon, but clues taken from context are enough to verify that the time expended was related to this case. Further, I take it as a given that Plaintiff's counsel, as officers of the Court, would not attempt to seek the award of attorneys' fees for time expended on an unrelated matter.

**4. All administrative entries are compensable.**  Defendants next contest all entries for Joan Raughley, a paralegal.  Defendants contend that all Ms. Raughley's activities "are administrative in scope and are therefore not recoverable."  ECF 27, at 22.  Plaintiff responds that "the challenged entries reveals that these tasks were for necessary and reasonable paralegal services."  ECF 29, at 8.

To determine the number of hours reasonably expended by a paralegal, courts should disallow hours spent on tasks that would not normally be billed to a paying client and those expended on tasks that are easily delegable to nonprofessional assistance.  *See, e.g.*, *Alexander v. NCO Fin. Sys., Inc.*, 2011 WL 2415156, at *6 (E.D. Pa. June 16, 2011); *see also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 552 (7th Cir. 1999).  Thus, the costs of clerical work, like filing and copying, ordinarily are considered overhead and are not compensated.  *See Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003).  Time expended on matters that directly advance the client's legal interests, however, such as preparing for the filing of a complaint or other submissions, arranging for service, reviewing court orders and party discovery, and editorial responsibilities, are compensable.

Here, none of the tasks attributed to Raughley are purely clerical in nature.  Instead, all are the types of tasks that have been approved by other courts and are fully compensable at counsel's paralegal rates.

**5. Certain hours attributed to a co-Defendant can be said to have "fairly supported" claims against all Defendants and are therefore compensable.**  Defendants next seek to eliminate fees included by Plaintiff "that are solely attributable to co-defendant JMK, and not to Aqua or Lyon at all."  ECF 27, at 23.  Defendants have identified 40.8 contestable hours, broken into two categories:  10.6 hours "concern[ing] JMK's pleadings, discovery, and settlement

efforts"; and 30.2 "spent researching and drafting an opposition to JMK's Motion to Dismiss/Compel Arbitration."  ECF 27, at 27.  Defendants contend that they should not be responsible for any of that time because a "defendant should not be required to compensate a plaintiff for attorney hours devoted to the case against other defendants."  ECF 27, at 27 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990)).  Plaintiff, by contrast, suggests that "when distinct claims against separate defendants share a 'common core of facts', the time expended on all claims is compensable."  ECF 29, at 6 (quoting *Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016)).

Both parties offer edited quotes that are capable of misleading.  It is true, as Plaintiff suggests, that *sometimes* time expended prosecuting claims against distinct defendants is compensable.  It is also true, as Defendants suggest, that *sometimes* one defendant should not be responsible for hours expended on claims related to other defendants.  *Mancini* made clear that "the Supreme Court has rejected a fee calculation approach that compares the total number of issues in the case with the number of issues on which the plaintiff prevailed."  *Mancini*, 836 F.3d at 321 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, n.11 (1983)).  Instead, where a plaintiff obtains less than full relief, district courts may adjust the award accordingly.  Courts may award fees attributable to absent defendants "where the plaintiff's claims [against present defendants] involve a common core of facts, or are based on related legal theories."  *Id.* (internal quotation marks omitted).  Courts may also "reduce the award if a full compensatory fee would be unreasonable in consideration of the degree of success obtained."  *Mancini*, 836 F.3d at 321.  In all, "[h]ow to measure the degree of success is left to the district court's discretion."  *Id.*

Like *Mancini*, *Rode* embraced a case-by-case approach.  *Rode* held that "attorney hours 'fairly devoted' to one defendant that also support the claims against other defendants are

compensable." *Rode*, 892 F.2d at 1185.  And like *Mancini*, *Rode* concluded that "hours chargeable to the claims against defendants who are found not liable are chargeable to defendants against whom plaintiff prevailed if plaintiff can establish that such hours also were fairly devoted to the prosecution of the claims against the defendants over whom plaintiff prevailed." *Rode*, 892 F.2d at 1185 (internal quotation marks and brackets omitted).  Thus, when considered in its entirety, the law in this Circuit allows counsel to petition the district court for hours reasonably expended to an absent defendant if those hours "fairly support" claims against the present defendants against whom the plaintiff prevailed.

Those principles are instructive here.  Defendants contend that the 30.2 hours Plaintiff spent researching and drafting an opposition to JMK's Motion to Dismiss/Compel Arbitration should not be compensable because Defendants "lack[ed] [] any involvement with JMK's motion," and "played no role in the filing or outcome of JMK's motion."  ECF 27, at 27.  The fact that Defendants "lacked involvement" or "played no role" in JMK's motion is not enough to establish that the hours Plaintiff's billed are not compensable.  Instead, I must investigate whether the hours expended by Plaintiff to defend against JMK's motion to compel arbitration "fairly supported" its legal claims against Defendants Aqua and Lyon.

I conclude that most of Plaintiff's work defending against that motion was reasonable and did fairly support its legal claims against the present Defendants, and that the time expended was reasonable.  Plaintiff's work defending against JMK's motion fairly supported its legal claims against these Defendants because they too sought arbitration and stood to benefit from JMK's motion if JMK had prevailed.  As Plaintiff points out, not only did Defendants Aqua and Lyon "not disclaim, renounce, or abjure JMK's motion to compel arbitration," they "filed an Answer that included arbitration as an Affirmative Defense."  ECF 29, at 7 (citing to Answer and

Affirmative Defenses of Defendants Aqua Finance and Lyon Financial, ECF 11, at 14).

Specifically, Defendants' Answer asserts that "all of Plaintiff's claims set forth in the Amended

Complaint are subject to an arbitration clause set forth in a separate contract with JMK, and must

proceed via arbitration with the American Arbitration Association."  ECF 11, at 14.  Further,

JMK's motion to compel arbitration did not on its face seek to restrict the legal claims that would

be subject to arbitration.  Rather, JMK's motion argued that the arbitration clause applied to "any

controversy or claim arising out of or related to" the legal agreement that instigated this whole

dispute.  ECF 9-4, at 6.

      Moreover, Defendant Aqua and Lyon would have gained a significant strategic advantage

if JMK prevailed on its motion.  In a past opinion (albeit involving different circumstances), I

discussed the rise of compulsory arbitration and attempted to "unsettle[] the notion that

arbitration is superior or even sufficiently comparable to litigation," and offered various pieces of

empirical evidence "suggesting that the arbitral forum's downsides may outweigh its benefits."

*Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 538 (E.D. Pa. 2018).  The benefits of a

jury trial are many, and in defeating JMK's motion to compel arbitration, Plaintiff retained his

right to a federal court, to discovery under the Federal Rules of Civil Procedure, and to an

eventual appeal, if he did not prevail.  It is true that these Defendants did not directly move to

compel arbitration, but as Plaintiff points out, "they had no problem allowing JMK to fight the

battle for them—knowing full well that they would reap the strategic advantages of confidential

arbitration if the motion were granted."  ECF 29, at 8.

      The same cannot be said for the approximately ten hours expended to handle JMK's

pleadings, discovery, and settlement efforts.  Certainly, some of that time fairly related to facts or

legal theories relevant to all Defendants, but almost as certainly some of that time did not.  Thus, of those hours, I will strike 4 hours for each of Plaintiff's counsel.

   **6. Plaintiff Counsel's fees litigating the fee petition are compensable.**  Finally, a party entitled to an award of attorneys' fees also is entitled to reimbursement for the time spent litigating its fee application.  *Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002).  But a "request for attorney's fees should not result in a second major litigation."  *Hensley*, 461 U.S. at 437.  Instead, like with the original fee petition, the hourly rates requested, and the time expended must be reasonable.

   Defendants have not contended that the time expended by Plaintiff's counsel litigating the fee petition was unwarranted or excessive, and my independent review of the invoices does not suggest otherwise.  Plaintiff's counsel also requests compensation for an additional 10.4 hours of work finalizing their reply to Defendants' motion opposing the fee petition, which I find reasonable.  The hourly rates approved above will apply.

* * * * *

   For the foregoing reasons, I will reduce Plaintiff's requested award of attorneys' fees, as follows.

| Name | Rate | | Hours | | TOTAL |
|---|---|---|---|---|---|
| | Requested | Approved | Requested | Approved | |
| Flitter | $735 | $725 | 39.4 | 31.4 | $22,765 |
| López-Jacobs | $275 | $275 | 81.8 | 77.8 | $21,395 |
| Raughley | $195 | $195 | 14.5 | 14.5 | $2,828 |
| | | | | | **$46,988** |

     /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge